# In the United States Court of Federal Claims

No. 13-149C

(Filed: April 17, 2015)

| | | |
|---|---|---|
| ********************************** | ) | Suit for military pay and allowances by an ex-Navy Corpsman who was placed on the TDRL, then deemed fit for duty, but then denied reenlistment as unsuitable to serve; application of 10 U.S.C. §§ 1201, 1210, 1211, and 1214a |
| **MICHAEL B. MILLER,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| **UNITED STATES,** | ) | |
| **Defendant.** | ) | |
| ********************************** | | |

Jason E. Perry, Wellington, Florida, for plaintiff.

Anthony F. Schiavetti, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Joyce R. Branda, Acting Assistant Attorney General, Civil Division, Robert E. Kirschman, Jr., Director, and Reginald T. Blades, Jr., Assistant Director, Civil Division, United States Department of Justice, Washington, D.C. Of counsel were Jonathan B. Blazek, Lieutenant Commander, United States Navy, and Andrew E. Carmichael, Lieutenant Commander, United States Navy, Office of the Judge Advocate General, General Litigation Division, Washington, D.C.

## OPINION AND ORDER

LETTOW, Judge.

Plaintiff, Michael B. Miller, brings this action against the United States for active duty pay and allowances or, alternatively, for military disability retirement pay and benefits. *See* Compl. ¶ 1. Plaintiff alleges that the United States Navy "violated [a] statute and its own regulations" by denying him active duty pay and allowances and retirement pay when it refused to allow him to reenlist and return to active duty, after temporarily retiring him for mental health disabilities, even though on a subsequent examination he was found fit for duty. Compl. ¶ 1. Pending before the court is the government's motion to dismiss pursuant to Rules 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC") for lack of subject matter jurisdiction and RCFC 12(b)(6) for failure to state a claim upon which relief can be granted, or, in the alternative, a motion for judgment on the administrative record pursuant to RCFC 52.1.

*See* Def.'s Mot. to Dismiss or, in the Alternative, Mot. for Judgment on the Admin. Record and App. ("Def.'s Mot."), ECF No. 27. In its motion, the government argues that Mr. Miller's claims are moot because he "has received one of the two alternative forms of relief sought in the complaint," and his claims are otherwise not justiciable. *Id.* at 2-3. Additionally, the government avers that the administrative record demonstrates that the Navy "followed the appropriate procedures in placing [plaintiff] on the [Permanent Disability Retirement List ('PDRL')] and applied the [Physical Evaluation Board's ('PEB's')] decision retroactively so as to render any delay harmless." *Id.* at 3. Also pending before the court is plaintiff's cross-motion for judgment on the administrative record. Pl.'s Resp. to Def.'s Mot. and Cross[-]Mot. for Judgment on the Admin. Record ("Pl.'s Cross-Mot."), ECF No. 30.

A hearing on the competing motions was held on March 24, 2015. *See* Hr'g Tr. (Mar. 24, 2015).[1] Following the submission of the government's motion, plaintiff's response and cross-motion, the government's response and reply, and plaintiff's reply, the case is ready for disposition. For the reasons stated, the court denies the government's motion to dismiss but grants judgment on the administrative record in favor of the government.

## FACTS[2]

Mr. Miller entered active duty in the United States Marine Corps on July 25, 1989. Compl. ¶ 7, *see also* Def.'s Mot. at 3. He served as a helicopter mechanic for four years and eleven months, after which he was honorably discharged on June 24, 1994. Compl. ¶ 7. On November 26, 1996, he enlisted in the Navy as a Navy Corpsman, and was later promoted to the grade of Hospital Corpsman Second Class (HM2), E-5. Compl. ¶ 7.

On September 8, 2005, Mr. Miller was referred by a Navy Medical Evaluation Board to the Navy Physical Evaluation Board for major depressive disorder (recurring and moderate) and obsessive compulsive traits. AR 516-519 (Report of Medical Board, Mental Health Services, Naval Medical Center San Diego (Sept. 8, 2005)); AR 524-27 (Initial Evaluation, Mental Health Unit-Branch Medical Clinic, Marine Corps Recruit Depot (Jan. 10, 2005)).[3] He was notified of this referral on October 17, 2005 and did not object. AR 520 (Statement of Patient Concerning the Findings of a Medical Board (Oct. 17, 2005)).

On March 23, 2006, while serving on active duty and completing the Physical Evaluation Board process, Mr. Miller's car was hit by a drunk driver. Compl. ¶ 8. As a result of the accident, plaintiff suffered knee and eye injuries, which were sustained in the line of duty.

---

[1]Further citations to the transcript of the hearing will omit reference to the date.

[2]The court's findings of fact are based on the Administrative Record. *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1357 (Fed. Cir. 2005) ("[T]he [c]ourt . . . is required to make factual findings under [what is now RCFC 52.1] from the record evidence as if it were conducting a trial on the record.").

[3]The administrative record is paginated consecutively and will be cited as follows: "AR __."

Compl. ¶ 8; Def.'s Mot. at 3. The Navy subsequently referred Mr. Miller to a Medical Evaluation Board and put his Physical Evaluation Board process on hold so that the extent of the additional injuries could be assessed. Compl. ¶ 8; Def.'s Mot. at 3-4. On November 17, 2006, the Medical Evaluation Board found that plaintiff suffered from the following injuries: "closed fracture of unspecified part of fibula with tibia[;] pain in joint involving other specified sites[;] aftercare for healing traumatic fracture of lower leg[;] corneal opacity . . . [;] major depressive disorder. . . [;] posttraumatic stress disorder[;] head injury. . . ." Compl. ¶ 9. On January 4, 2007, plaintiff was again referred to the Physical Evaluation Board. Def.'s Mot. at 4. After a review of Mr. Miller's full medical record, on February 5, 2007, the Physical Evaluation Board found plaintiff unfit to perform the duties of his grade and rate due to his major depressive disorder, rated at a disability rating of 30%. Compl. ¶ 10; *see also* Def.'s Mot. at 4. In addition, the Physical Evaluation Board also found that plaintiff suffered from orthopedic and ocular injuries sustained from the car accident, as well as from avoidant and obsessive compulsive traits. Compl. ¶ 10; *see also* Def.'s Mot. at 4. As a result, on February 27, 2007, Mr. Miller was discharged and placed on the Temporary Disability Retired List ("TDRL"). Compl. ¶ 11; *see also* Def.'s Mot. at 4.

For the next several years, Mr. Miller continually sought treatment for his injuries from civilian, Navy, and Department of Veterans Affairs doctors. Def.'s Mot. at 4. His physical injuries gradually healed and his major depressive disorder was repeatedly diagnosed as reoccurring but stable. AR 481-83 (Veterans Affairs' description of treatment for major depressive disorder as of Nov. 15, 2010). In 2010, with his doctor's consent, plaintiff discontinued his psychotropic medication, Effexor. AR 320-22 (Psychiatry Attending Notes (2010)). By October 19, 2010, however, Mr. Miller began to experience side effects from discontinuing his medication, including headaches, depression, and anxiety. AR 409 (Psychiatry Attending Note (Oct. 19, 2010)).

On November 29, 2010, Mr. Miller received his first periodic reexamination after his placement on the TDRL. Def.'s Mot. at 5. His treating physician at the Navy Medical Center recommended that he be retained on the TDRL at his current level of disability. AR 397-98 (Health Record, Adult Psychiatry Care, Dr. Robert McLay (Nov. 29, 2010)). The physician noted signs of improvement and stabilization but also observed that plaintiff's condition was recurrent and suggested that plaintiff may decompensate if returned to active duty. *Id.*

Six weeks later, on January 10, 2011, the Physical Evaluation Board found Mr. Miller physically fit, in part based on the fact that he worked full time as a civilian at a Naval Hospital and was off his psychotropic medication. AR 234-35 (Dr. Carlson Notes (Jan. 11, 2011 and Mar. 3, 2011), AR 390-91 (Findings of the Physical Evaluation Board Proceedings (Jan. 10, 2011)). Plaintiff responded by requesting an informal reconsideration of the Physical Evaluation Board's determination, insisting that his "condition(s) more appropriately warrant[ed] . . . TDRL/PDRL." AR 238 (Election of Option (Feb. 17, 2011)). In support of his request, he submitted a personal statement and notes from four treating physicians attesting to plaintiff's symptoms, including "trouble sleeping, concentrating, eating, and working" and suicidal thoughts and professing their belief that plaintiff was not fit for active duty and the stress of active duty would cause his condition to deteriorate. AR 241-47 (Personal Statements). The Physical Evaluation Board informally reconsidered the record, but on March 7, 2011 again

determined plaintiff was fit and ordered him to be removed from the TDRL list in June 2011. AR 231-33 (Findings of Physical Evaluation Board Proceedings (Mar. 7, 2011)).

In March 2011, plaintiff again began taking psychotropic medications, including Klonopin and Celexa, to treat symptoms including depression, suicidal thoughts, and amotivation. AR 89-92 (Medical Record Progress Notes (Mar. 3, 2011))). He also continued to take Wellbutrin. AR 193 (Chronological Record of Medical Care (May 26, 2011)). Nonetheless, on July 8, 2011, he consented to reenlistment. Compl. ¶ 14; AR 190 (Statement Concerning Resolution of Status in the U.S Navy Service).

In the following months, Mr. Miller began medical prescreening for reenlistment. Compl. ¶ 14; AR 221-24 (Medical Prescreen of Medical History Report (Dec. 27, 2011)). On January 3, 2012, during the prescreening, plaintiff's treating physician, Dr. Michael Lee, noted plaintiff's recurrent and severe depressive disorder and assessed him as unsuitable for reenlistment. AR 226 (Medical Prescreen, Physician's Comments (Jan. 3, 2012)). Subsequently, on January 19, 2012, Dr. Jim Caruso, the Navy's Medical Waiver Authority for enlistment, completed a paper review of plaintiff's medical record and concluded that "further processing of [plaintiff's application] [was not] warranted" because of his "diagnosis of major depressive disorder and PTSD ["Post-Traumatic Stress Disorder"] requiring continuous treatment with psychological counseling and multiple medications." AR 74 (Mem. of Dr. Caruso (Jan. 19, 2012)); Compl. ¶ 15.[4] However, on February 8, 2012, the Commander, Navy Recruiting Command, issued a new memorandum stating that "further processing of [plaintiff's application] IS warranted" and requesting resubmission of plaintiff's application including a current physical examination. Compl. ¶ 16. Between February and April 2012, plaintiff contacted various parties including his Navy recruiter, Congressman Duncan Hunter, and the Executive Assistant to the Commander of Navy Medicine West, requesting assistance in returning to active duty. Compl. ¶ 17. Finally, on April 2, 2012, Dr. Caruso conducted a second review of plaintiff's record and issued a third memorandum. AR 72 (Mem. of Dr. Caruso (Apr. 2, 2012)). In the memorandum, citing an exacerbation of symptoms and use of antidepressants, anxiolytics, and prescription sleep medications, Dr. Caruso again concluded plaintiff was not suitable for reenlistment. *Id.* As a result, plaintiff was denied a medical waiver for reenlistment and his reenlistment was disapproved. Mr. Miller acknowledged that he received notice of the decision by phone and e-mail in June 2012. Def.'s Mot. at 9. His entitlement to TDRL pay expired on May 22, 2012. AR 71 (Letter from E. Hodge to Miller (July 11, 2012)).

Mr. Miller filed a complaint in this court on February 27, 2013, requesting active duty back pay and allowances from the date of his removal from the TDRL or, alternatively, disability retirement. *See* Compl.; *see also* Pl.'s Cross-Mot. at 2. In response, on July 2, 2013, an Assistant Secretary of the Navy issued a memorandum to the Director of the Council of Review Boards instructing the Physical Evaluation Board to reevaluate the plaintiff and determine his

[4]The Medical Waiver Authority also stated that plaintiff was "placed on TDRL for right eye corneal scarring with slight loss of visual acuity status" but that he was "found fit for duty for those medical conditions and released from TDRL on [June 10, 2011]." AR 74. As the government notes, this recitation was inaccurate because plaintiff's "combined disability rating of 30% was attributed solely to his major depressive disorder." Def.'s Mot. at 8.

fitness to perform duties of his grade and rank. AR 1-2 (Mem. by Juan M. Garcia, Assistant Secretary of the Navy, Manpower and Reserve Affairs (July 2, 2013)).[5] The Physical Evaluation Board accordingly ordered a second TDRL evaluation. AR 8 (Order for Directed Reconsideration (July 18, 2013)). After completing a questionnaire, AR 28-40 (Personal Questionnaire, Michael B. Miller), Mr. Miller was evaluated by a doctor who concluded that plaintiff continued "to experience manifestations of an active condition which limits his capacity for handling stress" and suggested that if returned to active duty "it [was] highly likely [plaintiff] would continue to experience symptoms and may decompensate, increasing the possibility of suicide attempt or completion," AR 13-14 (Mental Status Exam by Dr. Genelle Weits). After a second periodic TDRL evaluation, the Physical Evaluation Board convened and on October 1, 2013 unanimously found plaintiff unfit for duty and recommended his permanent retirement. AR 3-5 (Decision by Navy PEB (Oct. 1, 2013)).[6] The President of the PEB instructed the Chief of Naval Personnel to "effect the PERMANENT RETIREMENT of [plaintiff] from the Naval Service under the provisions of Title 10 U.S.C. § 1210." AR 69 (Mem. from President, PEB to Chief of Naval Personnel (Nov. 7, 2013)). The Commander of the Navy Personnel Command accordingly retired plaintiff and informed him by letter on December 13, 2013 that he would be placed on the PDRL due to permanent physical disability at a rating of 30% as of May 22, 2012. AR 70 (Letter from Commander, Navy Personnel Command to Miller (Dec. 13, 2013)). The effective date of retirement included in the letter was "the following day after [he] [was] released from the TDRL." *Id*. Accordingly, Mr. Miller was placed on the PDRL effective May 22, 2012. *Id*.

## STANDARDS FOR DECISION

### *A. Subject Matter Jurisdiction*

Before proceeding to the merits, "a court must satisfy itself that it has jurisdiction to hear and decide a case." *Hardie v. United States*, 367 F.3d 1288, 1290 (Fed. Cir. 2004) (quoting *PIN/NIP, Inc. v. Platte Chem. Co.*, 304 F.3d 1235, 1241 (Fed. Cir. 2002)) (internal quotation marks omitted). When evaluating a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, the court will "normally consider the facts alleged in the complaint to be true and correct." *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). It is the plaintiff's burden to "allege in his pleading the facts essential to show [subject matter] jurisdiction" by a preponderance of the evidence. *McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936); *see also Reynolds*, 846 F.2d at 748.

Mr. Miller premises this court's jurisdiction on the Tucker Act, 28 U.S.C. 1491(a). Compl. ¶ 3. The Tucker Act confers jurisdiction on this court "to render judgment upon any

[5]The Council of Review Boards is an administrative agency within the Department of the Navy given responsibility for reviewing cases, conducting hearings, and rendering decisions on behalf of the Secretary of the Navy. Def.'s Mot. at 9 n.10.

[6]The Physical Evaluation Board review was not "standard" and did not allow plaintiff an opportunity to respond to the findings or participate in a formal hearing under 10 U.S.C. § 1214. *See* Pl.'s Cross Mot. at 3-4.

claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act waives sovereign immunity, authorizing a claimant to sue the United States for monetary damages. *United States v. Mitchell*, 463 U.S. 206, 212 (1983). However, the Tucker Act by itself does not provide a substantive right to monetary relief against the United States. *United States v. Testan*, 424 U.S. 392, 398 (1976); *see also Martinez v. United States*, 333 F.3d 1295, 1302-03 (Fed. Cir. 2003) (en banc). "A substantive right must be found in some other source of law." *Mitchell*, 463 U.S. at 216. To exercise jurisdiction under the Tucker Act, the plaintiff must establish an independent right to monetary damages by identifying a substantive source of law that mandates payment from the United States for the injury suffered. *Testan*, 424 U.S. at 400; *see also Ferreiro v. United States*, 501 F.3d 1349, 1351-52 (Fed. Cir. 2007) (quoting *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part)).

Even if properly acquired, jurisdiction "may abate if the case becomes moot" during the pendency of the litigation. *Los Angeles Cnty. v. Davis*, 440 U.S. 625, 631 (1979). "[T]he question of mootness is a federal one which a federal court must resolve before it assumes jurisdiction." *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)). The case or controversy requirement set forth in Article III of the United States Constitution requires that federal courts decide "actual, ongoing controversies." *Honig v. Doe*, 484 U.S. 305, 317 (1988); *see also Smith v. United States*, 58 Fed. Cl. 374, 381 (2003), *aff'd*, 110 Fed. Appx. 898 (Fed. Cir. 2004) (holding that the case-or-controversy requirement applies to this court when it "is exercising the judicial power of the United States."). A case is moot if (1) it can be stated with assurance that there is no reasonable expectation that the alleged violation will recur; and (2) interim relief or circumstances have completely and irrevocably eradicated the effects of any alleged violation. *Davis*, 440 U.S. at 631 (internal citations omitted). Accordingly, to avoid dismissal for mootness, "an actual controversy must remain at all stages, not merely at the time the complaint is filed." *Gerdau Ameristeel Corp. v. United States*, 519 F.3d 1336, 1340 (Fed. Cir. 2008).

### *B. Failure to State a Claim*

The government also seeks dismissal on the ground of plaintiff's failure to state a claim upon which relief may be granted. Dismissal is appropriate under Rule 12(b)(6) if the "facts asserted by the claimant do not under the law entitle him [or her] to a remedy." *Perez v. United States*, 156 F.3d 1366, 1370 (Fed. Cir. 1998). To survive a motion to dismiss for failure to state a claim, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Additionally, the facts alleged must "'plausibly suggest[] (not merely [be] consistent with)' a showing of entitlement to relief." *Cary v. United States*, 552 F.3d 1373, 1376 (Fed. Cir. 2009) (quoting *Twombly*, 550 U.S. at 557). While the complaint "does not need detailed factual allegations," *Twombly*, 550 U.S. at 545, it must present more than "'naked assertion[s] devoid of 'further factual enhancement,'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557)

(alteration in original), or "the-defendant-unlawfully-harmed-me-accusation[s]," *id*. (citing *Twombly*, 550 U.S. at 555). The court must "draw on its judicial experience and common sense" in determining whether the plaintiff has pled adequate facts to allow the court to infer that his or her entitlement to relief is plausible—not merely possible, *id*. at 679, and "must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to the plaintiff," *Cambridge v. United States*, 558 F.3d 1331, 1335 (Fed. Cir. 2009) (citing *Papasan v. Allain*, 478 U.S. 265, 283 (1986); *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991)).

Additionally, to survive a RCFC 12(b)(6) motion to dismiss, the claim must be justiciable. *See Houghtling v. United States*, 114 Fed. Cl. 149, 157-58 (2013). Justiciability depends on "whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded." *Murphy v. United States*, 993 F.2d 871, 872 (Fed. Cir. 1993) (quoting *Baker v. Carr*, 369 U.S. 186, 198 (1962)). A controversy is judiciable only if the governing statute, regulation, or instruction provides tests or standards for application by the court. *See Voge v. United States,* 844 F.2d 776, 780 (Fed. Cir. 1988) ("A controversy is 'justiciable' only if it is 'one which the courts can finally and effectively decide, under tests and standards which they can soundly administer within their special field of competence.'") (quoting *Greene v. McElroy*, 254 F.2d 944, 953 (D.C. Cir. 1958), *rev'd on other grounds*, 360 U.S. 474 (1959)); *see also Antonellis v. United States*, 723 F.3d 1328, 1334 (Fed. Cir. 2013); *Adkins v. United States*, 68 F.3d 1317, 1322 (Fed. Cir. 1995).

*C. Judgment on the Administrative Record*

Judgment on the administrative record "'is properly understood as intending to provide for an expedited trial on the administrative record,'" *Coastal Envtl. Grp., Inc. v. United States*, 118 Fed. Cl. 1, 10 (2014) (*quoting Bannum*, 404 F.3d at 1356), because the court makes factual findings based on evidence presented in the record, *id*.; *see also* RCFC 52.1 Rules Committee Note (2006) ("Cases filed in this court frequently turn only in part on action taken by an administrative agency. In such cases, the administrative record may provide a factual and procedural predicate for a portion of the court's decision . . . . This rule applies whether the court's decision is derived in whole or in part from the agency action reflected in the administrative record."). In essence the court looks to facts in the administrative record as the basis for determining whether the standards or criteria for awarding relief have been met. *See* RCFC 52.1 Rules Committee Note (2006) ("The standards and criteria governing the court's review of agency decisions vary depending upon the specific law to be applied in particular cases. The rule does not address those standards or criteria . . . . [A]ny motion . . . should be made on the basis of either the specific law to be applied in the particular case or generally applicable principles of administrative law.").

## ANALYSIS

### I. *Jurisdiction*

The Military Pay Act, codified at 37 U.S.C. § 204, serves as the independent, money-mandating provision that brings Mr. Miller's claims within the court's Tucker Act jurisdiction. This court has a long history of addressing military pay cases, *see, e.g.*, *United States v. Kelly*, 82 U.S. (15 Wall.) 34, 35 (1872); *Martinez v. United States*, 333 F.3d 1295, 1306 (Fed. Cir. 2003) (en banc), and has the authority to accompany an award of monetary relief with an order "directing restoration to office or position, placement in appropriate duty or retirement status, [or] correction of applicable records," 28 U.S.C. § 1491(a)(2).

The government contends that Mr. Miller's complaint should be dismissed for lack of subject matter jurisdiction because his claims are moot in light of the Navy's reevaluation and placement of him on the PDRL. *See* Def.'s Mot. at 2, 14-18. Following the submission by Mr. Miller of his complaint, the Physical Evaluation Board reevaluated plaintiff and found him unfit, resulting in the Chief of Naval Personnel Command retiring plaintiff to the PDRL at a rating of 30% retroactive to May 22, 2012, the day after his five-year eligibility on the TDRL expired. AR 70 (Letter from Commander, Navy Personnel Command to Miller (Dec. 13, 2013)). In the government's view, plaintiff's placement on the PDRL "effectively grant[ed] him one of the alternative forms of relief sought in the complaint," because "there was no interruption in or change to [plaintiff's] disability retirement benefits." *Id.* at 18.[7] Accordingly, as the government would have it, plaintiff "no longer retains any legally cognizable interest in this claim." *Id.*

Mr. Miller concedes that, by the retirement order, the Navy rendered moot Count II of his complaint, in which he sought disability retirement pay and benefits. Pl.'s Cross-Mot. at 3; *see* Compl. ¶¶ 23-25. However, he maintains that Count I of the complaint, in which he asserts entitlement to active duty pay and allowances, is not moot because "if reenlisted, and/or promoted, [his] compensation would be greatly increased over his lifetime as a result of having additional entitlements to basic pay based on years of service, updated pay rates, and potential higher rates of basic and retired pay based on retirement for length of service." Pl.'s Cross-Mot. at 3 (citing 10 U.S.C. § 1401); *see also* Compl. ¶¶ 20-22. In his view, the government's actions in 2013 after the filing of the complaint do not adequately compensate for its failure to reenlist plaintiff in 2011, which plaintiff avers was required by statute and government regulations. Pl.'s Cross-Mot. at 3.

The parties' briefing and argument demonstrates that, despite the fact that the government provided Mr. Miller some relief in December 2013 when it placed him on the PDRL, an actual controversy remains: namely, whether plaintiff possessed a statutory right to reenlist in 2011. *See* Pl.'s Cross-Mot. at 17-19. If, as plaintiff posits, the Navy was required by

---

[7]The government comments that plaintiff's complaint "requests PDRL retirement pay beginning on June 10, 2011, rather than May 22, 2012," but notes that Mr. Miller "has already been paid disability retirement benefits for the period of June 10, 2011, to May 22, 2012, and is not entitled to be paid them again." Def.'s Mot. at 18 (citing Compl. at 10; AR 70-71).

10 U.S.C. § 1211 and its own regulations to reenlist plaintiff in 2011, plaintiff would have spent less time on the TDRL, potentially entitling him to active duty back pay, benefits, promotion, and a length-of-service retirement. *See id*. at 18-20.[8] Therefore, because the interim relief afforded to plaintiff due to the government's actions has not "completely and irrevocably eradicated the effects of the alleged violation," plaintiff's claims are not moot and the court has jurisdiction to hear them. *Davis*, 440 U.S. at 631.

II. *Justiciability*

The government contends that Mr. Miller fails to state a claim upon which relief can be granted because his claims for active duty back pay and to be promoted are "not justiciable," arguing that the decision not to reenlist him fell within the Navy's discretion. Def.'s Mot. at 19-21. In support of its position, the government accentuates the deference given to "the various military branches when reviewing personnel decisions, because the branches are specially equipped to make such determinations." *Id.* at 20.

During the century and one-half that this court and its predecessor have adjudicated military pay cases, *see, e.g.*, *Kelly*, 82 U.S. (15 Wall.) 34, the role of the court in deciding these cases has changed markedly, largely in response to Congress's authorization of military correction boards in 1946. *See generally Martinez*, 333 F.3d at 1306 (quoting Legislative Reorganization Act of 1946, Pub. L. No. 79-601, § 207, 60 Stat. 812, 837). While previously cases were once brought as *de novo* actions in the Court of Claims in which the court assumed a traditional fact-finding role, after the formation of military correction boards, cases were increasingly presented to a military board first, converting the court's function into one of reviewing administrative action by boards based on the administrative record. *Compare Heisig v. United States*, 719 F.2d 1153, 1157 (Fed. Cir. 1983), and *Brown v. United States*, 396 F.2d 989, 991 (Ct. Cl. 1968), *with Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985), and *Walls v. United States*, 582 F.3d 1358, 1367-68 (Fed. Cir. 2009). At present, military boards are regarded as entities having "special expertise" and are generally granted deference. *See, e.g.*, *Sargisson v. United States*, 913 F.2d 918, 922 (Fed. Cir. 1990) ("A court lacks the special expertise needed to review reserve officers' records and rank them on the basis of relative merit."); *see also Richey v. United States*, 322 F.3d 1317, 1327-28 (Fed. Cir. 2003) ("The reluctance of the judiciary to review promotion actions of selection boards is rooted not only in the court's incurable lack of knowledge of the total grist which the boards sift, but also in a preference not to meddle with the internal workings of the military. . . . No court is in a position to resolve and pass upon the highly complicated questions and problems involved in the promotion procedure.") (quoting *Porter v. United States*, 163 F.3d 1304, 1316-17 (Fed. Cir. 1998) (in turn quoting *Brenner v. United States*, 202 Ct. Cl. 678, 692, 694 (1973))). Review of an administrative decision is accordingly "limited to determining whether the action was

[8]Mr. Miller notes, "[t]here are significant additional benefits to being retired for length of service over being retired for disability." Pl.'s Cross-Mot. at 19. The benefits include (1) an increase in retirement pay calculations, *see* 10 U.S.C. § 1401; (2) receipt of monthly active duty pay, 37 U.S.C § 204; (3) an opportunity for promotion, which also increases pay; and (4) the possibility of concurrent pay from the military retirement accounts and for disability from the Department of Veterans Affairs, 10 U.S.C. § 1414. *Id.*

arbitrary, capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which [the complainant] has been seriously prejudiced." *Heisig*, 719 F.2d at 1156 (alteration in original) (citations omitted); *see also Melendez Camilo v. United States*, 642 F.3d 1040, 1044 (Fed. Cir. 2011) (quoting *Heisig*).

"Not every claim arising from a military decision presents a nonjusticiable controversy, however." *Adkins v. United States*, 68 F.3d 1317, 1323 (Fed. Cir. 1995). As the government concedes, although the Federal Circuit has repeatedly held that the "*merits* of a decision committed wholly to the discretion of the military are not subject to judicial review," it has also held that "a challenge to the particular *procedure* followed in rendering a military decision may present a justiciable controversy." *Id*. (emphasis in original); *see* Def.'s Mot. at 21. In this instance, the issues presented do not require the court to address discretion reserved for the military but rather to "determine whether the [requisite] procedures were followed by applying the facts to the statutory or regulatory standard." *Adkins*, 68 F.3d at 1323 (quoting *Murphy v. United States*, 993 F.2d 871, 873 (Fed. Cir. 1993)); *see also Fisher v. United States*, 402 F.3d 1167, 1176-77 (Fed. Cir. 2005) ("When there is a question of whether reasonable process has been followed, and whether the decision maker has complied with established procedures, courts will intervene, though only to ensure that the decision is made in the proper manner."). Because Mr. Miller is not challenging the merits of the Navy's decision either to place him on the TDRL or to retire him on the PRDL, but rather the statutory requirements triggered by his designation as "fit" by the Physical Evaluation Board, his claims are justiciable. *See generally Craft v. United States*, 544 F.2d 468 (Ct. Cl. 1976) (addressing similar facts where a plaintiff who was permanently separated for disability sought reinstatement, back pay, and correction of records).[9]

III. *Judgment on the Administrative Record*

The parties' cross-motions for judgment on the administrative record focus on interpreting the statutes pertinent to persons placed on the TDRL. Mr. Miller argues that the failure of the Navy to reenlist him once he was found fit to serve "is a facial violation of the statutes and regulations." Pl.'s Cross-Mot. at 20. The government resists plaintiff's interpretation of the relevant statutes and avers that the "Navy properly exercised its statutory authority to order that [plaintiff] be reevaluated" by the Physical Evaluation Board and "properly granted him a disability retirement . . . eliminating any gap in benefits." Def.'s Resp. to Pl.'s

---

[9]Mr. Miller's claim to a promotion is not justiciable. An award of monetary relief may be accompanied with an order "directing restoration to office or position, placement in appropriate duty or retirement status, [or] correction of applicable records." 28 U.S.C. 1491(a)(2). Nonetheless, a service member who is on active duty typically is "entitled only to the salary of the rank to which he is appointed and in which he serves," *Smith v. Secretary of the Army*, 382 F.3d 1288, 1294 (Fed. Cir. 2004), and the Military Pay Act cannot be used to obtain the salary of a higher rank for which the claimant was not selected, *see id*. at 1294-95. Two exceptions apply to the general rule: (1) when the plaintiff has satisfied the legal requirements for promotion but the military refuses to recognize his status; and (2) when the decision not to promote the service member leads to his compelled discharge. *Id*.

Cross-Mot. For Judgment on the Admin. Record and Reply in Support of Def.'s Mot. to Dismiss or, in the Alternative, Mot. for Judgment on the Admin. Record ("Def.'s Reply") at 7, ECF No. 31.

Title 10, Chapter 61 of the United States Code addresses service members' fitness and endows the Secretary of the Navy with the responsibility of assuring that Navy and Marine Corps personnel are fit to perform their duties. *See* 10 U.S.C. §§ 1201-1222. Under 10 U.S.C. § 1201, the Secretary may retire a service member upon a determination that the member "is unfit to perform the duties of the member's office, grade, rank, or rating because of physical disability incurred while entitled to basic pay," 10 U.S.C. § 1201(a), if the disability is rated "at least 30 percent under the standard schedule of rating disabilities in use by the Department of Veterans Affairs at the time of the determination," 10 U.S.C. § 1201(b)(3)(B). If the disability has not been determined to be permanent, a service member may be placed on a TDRL for a period of up to five years. 10 U.S.C. §§ 1202, 1210. While on the TDRL, the member must receive physical examinations at least once every 18 months to determine any change in the disability for which he was retired. 10 U.S.C. § 1210(a).

The parties' disagreement reflects differing interpretations of the applicability of three relevant statutory provisions: 10 U.S.C. § 1210(f), 10 U.S.C. § 1211, and 10 U.S.C. § 1214. Subsection 1210(f) provides:

> (f)(1) If, as a result of a periodic examination . . . or upon a final determination . . . it is determined that [a service member] is physically *fit* to perform the duties of his office, grade, rank, or rating, *the Secretary shall*--
>
> (A) *treat the member as provided in section 1211* of this title; *or*
>
> (B) discharge the member, *retire the member*, or transfer the member to the Fleet Reserve, Fleet Marine Corps Reserve, or inactive Reserve *under any other law* if, under that law, the member--
>
> (i) applies for and qualifies for that retirement or transfer; or
>
> (ii) is required to be discharged, retired, or eliminated from an active status.

10 U.S.C. § 1210(f) (emphasis added). Subsection 1211(b) provides, in pertinent part:

> (b) With his consent, any member of the naval service or of the Coast Guard whose name is on the temporary disability retired list, and who is found to be physically *fit* to perform the duties of his office, grade, rank, or rating under section 1210(f) of this title, *shall*--
>
> . . .
>
> (3) if he held a permanent enlisted grade in a regular component when his name was placed on the temporary disability retired list, *be reenlisted in his*

> *regular component in the grade permanently held by him when his name was placed* on the temporary *disability retired list, or in the next higher enlisted grade* . . . .

10 U.S.C. § 1211(b) (emphasis added). Finally, 10 U.S.C. § 1214a provides, in relevant part:

> (a) Disposition.--Except as provided in subsection (c), *the Secretary* of the military department concerned *may not* authorize the involuntary administrative separation of a member described in subsection (b), or *deny reenlistment* of the member, based on a determination that the member is *unsuitable* for deployment or worldwide assignment *based on the same medical condition of the member considered by a Physical Evaluation Board during the evaluation of the member*.
>
> (b) Covered members.--A member covered by subsection (a) is any member of the armed forces who has been determined by a Physical Evaluation Board pursuant to a physical evaluation by the board to be *fit* for duty.
>
> (c) Reevaluation.--(1) *The Secretary* of the military department concerned *may direct the Physical Evaluation Board to reevaluate any member* described in subsection (b) *if the Secretary has reason to believe that a medical condition of the member* considered by the Physical Evaluation Board during the evaluation of the member described in that subsection *renders the member unsuitable* for continued military service based on the medical condition.
>
> (2) A member determined pursuant to reevaluation under paragraph (1) to be *unfit* to perform the duties of the member's office, grade, rank, or rating *may be retired or separated for physical disability under this chapter*.
>
> (3) The Secretary of Defense shall be the final approval authority for any case determined by the Secretary of a military department to warrant administrative separation or denial of reenlistment based on a determination that the member is *unsuitable* for continued service due to the same medical condition of the member considered by a Physical Evaluation Board that found the member *fit* for duty.

10 U.S.C. § 1214a (emphasis added).

In Mr. Miller's view, the Navy's failure to reenlist and promote him facially violates 10 U.S.C. § 1211(b).[10] Plaintiff underscores that Section 1211 uses mandatory language when it

[10]Plaintiff also argues that retiring him violated the Navy's own regulations. See Pl.'s Cross-Mot. at 15-17 (citing Def.'s Mot. at Attach. DA 24 (Manual of the Medical Department (Aug. 12, 2005)), ¶ 15-29) ("[D]isqualifying medical conditions . . . that have not materially changed and did not interfere with [the service member's] ability to safely and effectively fulfill the responsibilities of [his or her] rank and rating should be classified as 'not considered disqualifying.'"). This regulation predates the effective date of 10 U.S.C. § 1214a in December 2011, however.

states that any service member on the TDRL who is found to be physically fit "*shall* . . . be reenlisted in his regular component in the grade permanently held by him when his name was placed on the [TDRL]." Pl.'s Cross-Mot. at 18 (citing 10 U.S.C. § 1211(b)(3)) (emphasis in original). Accordingly, Mr. Miller argues that his return to duty by reenlistment "was not a discretionary decision" but rather "was mandated by statute." *Id.*[11] In addition, he argues that 10 U.S.C. § 1214a has no effect on his case because he was never found "unsuitable" for continued service. Pl.'s Cross-Mot. at 7-8. Moreover, he contends that applying 10 U.S.C. § 1214a to retire him would defy the purpose of the statute, which was to rectify "the situation where the [Physical Evaluation Board] finds a member 'fit' and then the Military Department, under other provisions of law, separates him or denies him reenlistment based on the same conditions that he was found fit for," which plaintiff submits is the case at hand. *Id.* at 10.

The government disagrees, arguing that 10 U.S.C. § 1214a applies to plaintiff's circumstances and the Secretary's retirement of Mr. Miller under that statute was proper. As a preliminary matter, the government claims that plaintiff's claims "rest upon his mistaken assertion that he possessed a statutory right to reenlist" because plaintiff ignores the second half of 10 U.S.C. § 1210(f)[12] and his reading of 10 U.S.C. § 1211 is incorrect and taken out of context. Def.'s Reply at 3-5. Additionally, the government argues that plaintiff's interpretation of 10 U.S.C. § 1214a would limit that statute's "applicability to near insignificance, when in fact it was enacted to deal specifically with cases such as [plaintiff's]." *Id.* at 7.

Based upon an analysis of the pertinent statutes, the court agrees with the government that the Navy's actions were proper pursuant to 10 U.S.C. § 1214a. Sections 1210 and 1211 were both enacted in 1956 and in turn cross-reference each other. Both statutes refer to "fitness"

---

[11]*Craft*, 544 F.2d 468, applied Section 1211 to a situation where a solider in the Army had been placed on the TDRL by a PEB and then was found to be fit to return to duty. *Id*. at 475-76. Nonetheless, a Physical Review Council overturned the PEB without stating its rationale for doing so, and the soldier was separated from the Army for disability. *Id*. at 472. The Court of Claims ruled that the council's action could not be sustained because it had failed to provide a summary of reasons for reversing the decision of the PEB, which was favorable to the plaintiff. *Id*. at 474. Then the court applied 10 U.S.C. § 1211(a)(3), holding that "[u]nder this statute, a serviceman found fit to perform his duties must be reenlisted." *Id*. at 477.

Paragraph (a)(3) of Section 1211 pertains to servicemembers in the Army or Air Force, and that provision is *in pari materia* with Paragraph (b)(3) of Section 1211, which applies to servicemembers in the Navy or Coast Guard. Mr. Miller relies on the court's decision in *Craft* to support his position. While some of the circumstances in *Craft* are similar to those in this case, it is noteworthy that *Craft* was decided in 1976, more than 30 years before the enactment of 10 U.S.C. § 1214a in 2011. As a result, *Craft* does not address the influence of 10 U.S.C. § 1214a on the court's analysis under 10 U.S.C. §§ 1210 and 1211.

[12]While Mr. Miller does not specifically make an argument regarding 10 U.S.C. § 1210(f), he implicitly relies on 10 U.S.C. §1210(f)(1)(A), which provides that if a member is physically fit, the Secretary "shall . . . treat the member as provided in section 1211 of this title," thus triggering the application of 10 U.S.C. § 1211.

and do not address the related and yet distinct quality of "unsuitability." Section 1214a, entitled "Members determined fit for duty in Physical Evaluation Board: prohibition on involuntary administrative separation or denial of reenlistment due to unsuitability based on medical conditions considered in evaluation," was enacted on January 7, 2011, decades after the enactment of the other two sections. Section 1214a refers alternatingly to both being "fit" and "unsuitable" and was intended to address concerns regarding "service policies or practices that would deny reenlistment to otherwise eligible service members who have been determined to be fit for duty by a [Physical Evaluation Board], but unsuitable for continued service based on the same medical condition considered by the [Physical Evaluation Board]." *See* Pl.'s Cross-Mot. at 9 (quoting S. Rep. 112-26, at 111 (2011)).[13]

In applying Section 1211 to his case, Mr. Miller relies on an incomplete reading of Subsection 1210(f). Although Subparagraph 1210(f)(1)(A) states that if "it is determined that the member is physically fit to perform the duties of his office, grade, rank, or rating the Secretary shall . . . treat the member as provided in section 1211," Subparagraph 1210(f)(1)(B) provides an alternative, stating that the Secretary shall "discharge the member, retire the member, or transfer the member . . . under any other law if, under that law, the member . . . is required to be discharged, retired, or eliminated from an active status." 10 U.S.C. § 1210(f)(1)(A), (B). Therefore, although Section 1211, if applied in this case as in *Craft*, would require plaintiff's reenlistment "in the regular grade held by him when his name was placed on the temporary disability retired list or in the next higher regular enlisted grade," 10 U.S.C. § 1211(a)(3), the plain language of Subsection 1210(f) allows the Secretary to retire him if "any other law" authorizes that action, *see* 10 U.S.C. § 1210(f)(1)(B). The recently enacted and amended Section 1214a is such a law. *See* Hr'g Tr. 5:2-7. Indeed, it was passed specifically to address circumstances like plaintiff's, where a service member "has been determined by a Physical Evaluation Board pursuant to a physical evaluation by the board to be fit for duty," 10 U.S.C. § 1214a(b), and yet is determined to be "unsuitable for deployment or worldwide assignment," 10 U.S.C. §1214a(a); *see also* Hr'g Tr. 13:18-14:15.

Further, the administrative record demonstrates that the Navy in retiring plaintiff adhered to the requirements set out in Section 1214a, although it did so belatedly. While 10 U.S.C. § 1214a states that the Secretary generally "may not authorize the involuntary administrative separation of a member . . . or deny reenlistment of the member, based on a determination that the member is unsuitable . . . [,] based on the same medical condition . . . considered by a Physical Evaluation Board," an exception exists under which the Secretary "may direct the Physical Evaluation Board to reevaluate any member . . . if the Secretary has reason to believe that a medical condition of the member considered by the Physical Evaluation Board . . . renders the member unsuitable for continued military service based on the medical condition." 10 U.S.C. § 1214a(a) & (c).

---

[13]A provision of the National Defense Act for Fiscal Year 2012, Pub. L. No. 112-81, div. A, tit. V, § 527(a) to (c)(1), 125 Stat. 1298, 1401 (Dec. 31, 2011), amended Section 1214a to rewrite the heading and to insert "or deny reenlistment of the member" in Subsection 1214a(a).

Because 10 U.S.C. § 1214a did not become effective until December 2011, it was not in place until after plaintiff had been deemed fit by the Physical Evaluation Board in January 2011. It was, however, in effect before the Navy completed its evaluation of plaintiff's reenlistment request in January 2012. *See* Hr'g Tr. 6:10-15, 9:1-13.

Mr. Miller's major depressive disorder provided a reason for the Secretary to make such a finding. In 2006 and 2007, a Medical Evaluation Board twice referred plaintiff to a Physical Evaluation Board for major depressive disorder and the Physical Evaluation Board ultimately found plaintiff unfit for duty and assigned a 30% disability rating attributed entirely to his major depressive disorder, which impaired plaintiff's ability to perform his military functions. AR 486-88 (Notification of Decision, Physical Evaluation Board (Feb. 27, 2007)). Later, during a brief period when he had stopped taking several of his medications, plaintiff was found fit by the Physical Evaluation Board in January 2011. AR 234-35. However, on January 3, 2012, as part of plaintiff's prescreening process, Dr. Lee determined that plaintiff's recurrent and severe major depressive disorder disqualified him from reenlistment. Def.'s Mot. at 8. Likewise, on January 19, 2012, Dr. Caruso found that further processing of plaintiff's application for physical qualification for reenlistment was unnecessary because of his diagnosis of major depressive disorder and PTSD. AR 74. Finally, on April 2, 2012, Dr. Caruso again found that no further processing was warranted because plaintiff continued to require ongoing treatment for PTSD, major depressive disorder, and insomnia. AR 72 (Mem. of Dr. Caruso (Apr. 2, 2012)).[14] Although Dr. Caruso did not explicitly use the term "unsuitable," Dr. Lee did employ the term, *see* AR 226; *see also* Hr'g Tr. 17:2-10, and both doctors determined that plaintiff's major depressive disorder would inhibit his continued military service.

The government acknowledges that the determinations of Dr. Lee and Dr. Caruso "were in direct conflict with [S]ection 1214a, which had been enacted the previous year" because Mr. Miller had already been deemed fit for duty by a Physical Evaluation Board and therefore Dr. Lee and Dr. Caruso could not "at their level deny [him] reenlistment based on the same medical condition." Def.'s Reply at 8-9. To comply with Section 1214a, "Dr. Lee and Dr. Caruso should have forwarded his application for reenlistment to the office of the Secretary of the Navy, who is empowered under [S]ection 1214a to order a reevaluation by a [Physical Evaluation Board]." *Id*. at 9; *see also* Hr'g Tr. 8:10-16. Even so, any error committed by Dr. Lee and Dr. Caruso in 2012 was corrected after the complaint in this lawsuit was filed in 2013, at which point the Navy followed the process described in Section 1214a and forwarded plaintiff's application for reenlistment to the Secretary, who, acting through an Assistant Secretary of the Navy,[15] appropriately ordered his reevaluation by a Physical Evaluation Board, ultimately restoring him to the position he would have occupied but for the error. Def.'s Reply

[14]Notably, circumstances had changed between the period when plaintiff was deemed fit by the Physical Evaluation Board and when he was evaluated by Dr. Lee and Dr. Caruso. While plaintiff was not taking some of his psychotic medications in January 2011 at the time of his review by the Physical Evaluation Board, by the time Dr. Lee and Dr. Caruso evaluated him in 2012, he had resumed taking those medications. *See* Hr'g Tr. 10:14-22.

[15]Mr. Miller argues that the Navy's actions culminating in his retirement were improper because it was an Assistant Secretary of the Navy, not the Secretary of the Navy, who ordered a reevaluation by the Physical Evaluation Board. *See* Pl.'s Cross-Mot. at 14-15. However, the Assistant Secretary of the Navy had authority to act on behalf of the Secretary of the Navy pursuant to his "principal duty" of "overall supervision of manpower and reserve component affairs of the Department of the Navy." 10 U.S.C. § 5016(b)(2); *see also* Def.'s Mot. at Attach. DA55-60 (Secretary of the Navy Instruction 5430.7Q); Hr'g Tr. 20:24 to 22:13.

at 9.; *see also* Hr'g Tr. 8:17-22.[16] In sum, despite its initial error, the Navy properly acted within statutory authority pursuant to Subparagraph 1210(f)(1)(B) and Subsection 1214a(c) to retire plaintiff. Because plaintiff's permanent disability retirement applied retroactively to May 22, 2012, the day after his release from the TDRL, *see* AR 71, and plaintiff was never reenlisted or placed on active duty, plaintiff is not entitled to further relief. *See* 10 U.S.C. § 1201(a);[17] *see also Disability Retirement, OSD Military Compensation*, available at http://militarypay. defense.gov/retirement/disability.html (providing basic formula for computing disability retirement pay).

In addition, the Navy's action in plaintiff's case was not precluded by any statutory time limit. Plaintiff argues that the Navy's review of his case is unlawful because it occurred after the expiration of a mandatory five-year window for reviewing and finally adjudicating TDRL cases. *See* Pl.'s Cross-Mot. at 13 (citing 10 U.S.C. § 1210).[18] Because he was placed on the TDRL in 2007, *see* AR 486, plaintiff insists that the latest possible time for review by the Navy occurred in 2012, Pl.'s Cross-Mot. at 12-13. Moreover, plaintiff reasons that any remedial adjustments provided in 10 U.S.C. § 1214a do not modify or affect the five-year statutory period because the statutory language of 12 U.S.C. § 1210 is "more specific" and therefore "necessarily takes precedence over the general language in 10 U.S.C. § 1214a." *Id*. at 13. The court concurs that

---

[16]In addition to Section 1214a, the determinations of Dr. Lee and Dr. Caruso also conflicted with Navy regulations. *See* Def.'s Reply at 12. However, any error in that respect was similarly rectified when the Assistant Secretary ordered Mr. Miller's reevaluation by the Physical Evaluation Board and plaintiff was later retired for physical disability, retroactive to the day after his status and benefits on the TRDL expired. *See id*. at 12-13.

[17]Subsection 1201(a) provides, in pertinent part:

> (a) Retirement. – Upon a determination by the Secretary concerned that a member described in subsection (c) is unfit to perform the duties of the member's office, grade, rank, or rating because of physical disability incurred while entitled to basic pay . . . the Secretary may retire the member, with retired pay . . . , if the Secretary also makes the determinations with respect to the member and that disability specified in subsection (b).

10 U.S.C. § 1201(a).

[18]10 U.S.C. 1210 provides, in relevant part:

> (b) The Secretary concerned shall make a final determination of the case of each member whose name is on the temporary disability retired list upon the expiration *of five years after the date when the member's name was placed on that list*. If, at the time of that determination, the physical disability for which the member's name was carried on the temporary disability retired list still exists, it shall be considered to be of a permanent nature and stable.

10 U.S.C. § 1210(b) (emphasis added).

Section 1214a applies to more servicemembers than those placed on the TDRL. Nonetheless, Section 1214a was enacted particularly in response to the application of Sections 1210 and 1211 in a situation like plaintiff's. Also, Section 1214a specifically addresses the relatively small subset of service members first deemed "fit" and then found to be "unsuitable" to serve.[19] Mr. Miller is correct that 10 U.S.C. § 1210 would typically require the Secretary to review plaintiff's case within five years, but the application of 10 U.S.C. § 1214a, which makes no reference to any prescribed time limit, overrides the provisions of that section. Therefore, the Navy's review was not time barred.

## CONCLUSION

For the reasons stated, the government's motion to dismiss pursuant to RCFC 12(b)(1), or, alternatively, RCFC 12(b)(6) is DENIED. The government's motion for judgment on the administrative record is GRANTED, and plaintiff's cross-motion for judgment on the administrative record is accordingly DENIED. The clerk shall enter judgment in accord with this disposition.

No costs.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Judge

[19]While 10 U.S.C. § 1210 applies generally to determining the status of "[m]embers on temporary disability retired list," 10 U.S.C. § 1210 (title), 10 U.S.C. § 1214a applies to "[m]embers determined fit for duty in Physical Evaluation Board" and specifically prohibits "involuntary administrative separation or denial of reenlistment due to unsuitability based on medical conditions considered in evaluation," 10 U.S.C. § 1214a (title).